Good morning, Your Honors. May it please the Court, my name is Debra Smith and I represent the Petitioner Diane Langley. I'd like to reserve, do I have 20 minutes, Your Honors? You have 10 minutes. I'd like to, I'll keep an eye on the clock and I'd like to reserve two minutes for rebuttal. I represent the Petitioner Diane Langley in these proceedings. She is a 48-year-old citizen of the United Kingdom and like many, if not most, of the petitioners in this Court, on immigration appeals, she has U.S. citizen family members, a husband and three children. So, of course, her removal from the United States has very serious consequences for her and her immediate family members. And because of the drastic consequences of any deportation, the Court, courts since Fang Haotian have, the Supreme Court and Fang Haotian have ruled that the rule of lenity should be applied in construing deportation provisions. So we start with the question of whether Pickering is a reasonable interpretation of the statute, because if it is, we owe Chevron deference to it. You start with that and then go from there, don't we? I'm sorry, Your Honor. Are you asking me about the validity of Pickering in general or as it would apply to the facts of this case? I'm starting with the basic proposition that Pickering, if Pickering is a reasonable construction of the statute, we owe it Chevron deference. Then the question is, how does it apply to this case? Okay. Whether Pickering is – clearly, Pickering is an interpretation by the Board of Immigration Appeals of the definition of conviction that was enacted in 1996. And every other circuit has said that's a reasonable interpretation. Yes. There is a part of Pickering that, in my opinion, would cause concern in some situations, and that is the Board in Pickering, I believe, inappropriately places the burden on the person in the proceedings, so on the Respondent in the proceedings, on the Petitioner in this case, on the alien to produce documents. Well, the I.J. and the BIA, as I understand it in this case, the BIA adopted the I.J.'s decision, did a Barbano affirmance, which is adopting the decision, and the I.J. clearly had a conviction. Right. However, the I.J. and the Board also inappropriately placed the burden on Ms. Langley to establish that the vacator was issued on legal defense. Where did the I.J. do that? Your Honor, may I get my record? I mean, the I.J. says the Court finds that the service has met its burden with respect to conviction. I certainly read that as meaning it properly placed the burden on the I.N.S. That part of the burden the I.J. placed on the I.N.S. did not meet. The burden that the I.J. acknowledged, properly acknowledged, is on the government. However, if you look at page 3 of the immigration judge order, page 135 in the record, administrative record, the immigration judge states the transcript of proceedings in this case makes it clear the purpose of the modification of the conviction was to prevent deportation of Federal matter not to rectify an error in the initial proceedings. Yes. However, the transcript of the proceedings is not the only matter relevant to whether the vacator was obtained only to ameliorate immigration consequences. Okay. Well, now we've moved beyond burden of proof to whether they got it right. Well, there are two elements to the burden of proof I think at issue in this case, Your Honor. One is, is the government has to establish deportability by clearing convincing evidence under the Immigration Act. Which it can do if there is a conviction. Which it can do if there is a conviction. Once the Respondent, so if the Respondent introduces evidence of a vacator due to legal defect on that conviction, then the burden of persuasion changes back. The Respondent then has met her burden of proof to establish that the original conviction on which the government wants to rely is no longer valid. Okay. Look, let me submit something to you. The transcript, as I read it, clearly and convincingly shows that the only reason for the vacator was the possibility that Langley would be deported. I believe that's practically a quote of what the trial judge said. It is. That's the way I read it. That's the way the I.J. read it. That's the way the BIA read it. Now, it's perhaps the case that it's subject to other possible interpretations, but that's clearly one reasonable interpretation of how it went down. Yes? Your Honor, I would respectfully disagree that that is a reasonable interpretation because the statute under which Ms. Langley had to obtain the vacator of the felony theft conviction requires her to have established that there was some sort of legal defect in the underlying conviction. The fact that the prosecutor agreed to withdraw the original charging document and substitute a new complaint, an amended information, and there's no record of that information here, there's no record of the reasons for the motion to change guilty plea, all we have is a conversation between the judge and Ms. Langley, the trial court judge, clearly indicating that one of the motivating reasons behind doing this was to ameliorate immigration consequences. However, that doesn't meet the Montana standard for doing what should be. Well, then that just means that the conviction shouldn't have been vacated. I mean, I don't get where that gets you. Well, where it gets me is that the burden is on the government in this case to establish that their full faith and credit is required to be given to State court orders. The burden is on the party that seeks to set us to not recognize that order, to establish that it was made unlawfully. Well, let me, let me, I think I understand what you're saying. We have a portion of a record of the State court proceeding, and that portion clearly suggests and shows that it was done for a motive of immigration. You're saying there might be some more of the record that includes a motion to vacate that articulates what would be a legal flaw in the procedure. Now, aren't we going down a path of saying no matter what we have by way of a record, there might be some more. There might be some more. And any time you look at any record of any court, you can always say, oh, there might be some more. There might be a decision of the court later on overruling anything we look at. So once you start down this path of saying, well, now the government has got to show that there is more, whatever there might be, there is more. I agree with that, Your Honor. There always might be more. In this case, we know there's more. How do we know? I'm sorry. You know there's more of what? We know that there was an amended information. We know that there was a motion to vacate the conviction and withdraw the guilty  How do we know? Well, it's in the district court minutes in this record, and which is page 282 of the record. And it's also the fact that the motion was made and was granted is reflected in the change of plea hearing transcript. Well, we know there was a lot of discussion off the record, too. Are you trying to argue that there was a Montana-based legal error here that allowed her to vacate her original plea? Absolutely. And so that's what we should be assuming, absent proof from the government that there was some other – that it was solely for – don't worry about the clock right now. I just want to get an answer to my question, because I'm trying to understand your theory. Yes, Your Honor. Judge Fischer, that's what I briefed, that there had to have been a legal defect for Ms. Langley to do what she did. You couldn't just do it because he was sympathetic to her because of potential immigration consequences. It would be – this is very much like the decision in Penhall that the Third Circuit just announced. Well, you're representing her. What was it? I was not criminal defense counsel, nor was I immigration counsel before. No, but you're her counsel. You're her counsel now. No, I don't know. I don't have any more of the record than you do. But I do know. I've looked at Montana law. Board precedent, Roldan and Pickering require the starting place to be to look at the law under which the conviction was vacated. That did not happen in this case. No one until this – Well, as I said, then why am I incorrect? Either it was an improper vacatur and the conviction stands, or it was vacated, which is clearly in your client's favor, for whatever the reason, and we accept the articulated reason of the State court at its face value. It was an improper – I'm sorry. The government has not met its burden to show that the vacatur was improperly made. It shows what the judge based it on. But it does not – the government does not present the amended information. It does not present the motion to vacate guilty plea. The burden of proof is on the government. And what would that show?  What would either of those documents show? Well, we don't know, Your Honor. Pardon me? We don't know. But you represent her. You have access to the record. But I do not have the criminal record. And even if I did, it's not in – it was not presented to the agency. Okay. Anything else? No. Thank you. Thank you, Ms. Smith. Counsel. Good morning. May it please the Court. David Daunheimer on behalf of the Respondent, the Attorney General. The Board in this case made a reasonable decision that Ms. Langley's conviction for felony theft remained a conviction for immigration purposes because the evidence of record clearly established that the vacatur that she saw was based upon the immigration consequences of the felony theft conviction. What do you make of the statement by the Board that the evidence of record tends to indicate that this conviction was vacated, particularly in light of the conversation we've just had? Doesn't that suggest that the Board itself wasn't entirely clear that it was clearly for that purpose, but based on what was before it, it was enough?  Why isn't that a legal defect? First, as noted by the Court, the Board did adopt and affirm the immigration judge's decision, which found that the evidence of record established by clear and convincing evidence that the conviction remained for immigration purposes. Well, but it did. And the standard is clear, unequivocal, unconvincing evidence. And this doesn't seem to be unequivocal. And they may have adopted it, but they put a gloss on it. And the gloss is that the evidence of record tends to indicate. To the extent that that may be read as indicating that the Board had some question as to whether it was sufficient, I think that would be contrary to the Board's decision in the matter in that they adopt and affirm the immigration judge's decision. Yeah, they may have done it for a wrong reason. I mean, they did do that. But why did they bother to say it tends to? If we're going to give Chevron deference to the Board, I'd like to give deference to the language they take the trouble to put in their opinion. And their opinion says it tends to. That's not the same as saying it clearly and convincingly and unequivocally. In fact, it's contrary to unequivocal. Well, I think also there's the argument that the burden of proof doesn't necessarily shift in the manner that the Petitioner argues it does in this case. The Department of Homeland Security has the initial burden of proof of proving that the alien has suffered a conviction under the Immigration and Nationality Act that renders that alien deportable. In this case, the Department of Homeland Security meets that burden when they show the initial felony conviction for theft. And by doing so, they've met their initial burden of proving this conviction. Congress has chosen to set the definition of conviction as being at the time of judgment, not at the time of all appeals have been exhausted or at the time of all motions have been exhausted, but rather at the time of judgment. Thereafter, if the alien wishes to attack the validity of that judgment, the burden would shift to the alien to come forth with some evidence that that judgment is not a judgment for immigration purposes. In this case, the alien doesn't come forth with any evidence that would undercut that finding. In fact, the alien asks the Court to presume that some unknown evidence out there would undercut the finding of the immigration judge that the accusatory was solely for immigration purposes. So what you're saying is she had the burden all along. All you had to do was show the original conviction, and that's the end of it as far as the government's burden, and then it's up to the alien to prove by clear, convincing, and unequivocal evidence? Well, it would be up to the alien to come forward with evidence that that conviction does not meet the definition of conviction under the INA. And there may be various reasons why that would be true. It may have been overturned on appeal. It may have been vacated on a substantive basis on the merits. And so the alien in this case, to bring it home to this case, had the petitioner had the obligation to put into the record the two documents that counseled the mentioning the amended information. That was her burden to bring that forward, not the government's? Well, if the alien believed that that information contained evidence that would undercut the finding that it was based on immigration purposes, that would certainly be information the alien would want to bring forward and bring to the attention of the court. Or at least the alien should represent to the court that the basis of those documents were on a merits or substantive basis for the vacator. The alien in this case won't even do that. They simply want the court to presume that there was some legal basis other than the stated basis that the judge indicates in the transcript of the plea hearing, which is the modified resolution of this case is in response to the possibility that she could be deported. So if the board did have doubts, if what they say tends to show is a reflection on the board's part, that they acknowledge that there may have been legitimate reasons, but at least what's before them tends to show, then if that is their state of mind in affirming the IJ, does that mean that it's the, if there's any doubt in the record, the burden falls of that on the petitioner? I think once the service has proved, proven the initial conviction by clear and convincing evidence, if the alien wishes to attack that conviction, the burden rests on the alien to bring forth evidence that that conviction is not good for immigration. So you could put in just the evidence of the initial conviction, and then the petitioner alien would have to prove that it had been overturned on appeal.  Some evidence. And then they would have to go through and make sure that they had analyzed and put forth all the evidence necessary to negate any notion that it was done for purposes of avoiding deportation consequences. Well, I don't think it goes quite that far, Your Honor. I think if, for instance, the alien in this case had put forth just the order vacating the judgment, which is somewhat ambiguous as to the basis of it. It just states that the alien came in, they withdrew the plea, and they substituted the misdemeanor plea. At that point, the record would be unclear as to what the basis of that vacator was. And who would bear the consequence of that uncertainty? I believe the government would then have to show that that vacator was done for the purposes of avoiding deportation consequences. Which presumably is why the government put in the transcript. Correct, Your Honor. Okay. Now, did not the government then also have the burden to put all the documentation in surrounding that? Once it was undertaking, you could put in selectively a part, but not also put in the information in the charging document, amended document. Why wouldn't it put in the whole record? It's unclear why they wouldn't put in the whole record, but I think perhaps the burden is for the government to come forth with sufficient evidence to show that the vacator was done for immigration purposes. They probably looked at the trial record of the plea agreement there and found sufficient evidence just within that to demonstrate what the basis of the vacator was. Well, is there any reasonable basis for supposing that the information, which, of course, is just a reduced indictment, I mean, it's not going to say anything. It's just going to charge her with the crime, right? Correct, Your Honor. Okay. So then so that couldn't possibly shed any light on anything. So the only thing that arguably could shed light is the motion paper itself. Yes, Your Honor. And in this case, you have in the transcript Langley's counsel saying that explaining why it's a good thing to do and it's entirely immigration-related. That's correct, Your Honor. So is there any reasonable possibility, other than just pure speculation, that the motion might have said something other than what counsel said in open court? We don't believe so, Your Honor. Depending on your questions, that's all I have. Thank you. Okay. Anything further for her? She's way over time. Your Honors, the original charging document charging felony theft was withdrawn. The conviction was vacated. There was a felony theft in Montana involves an amount over $1,000. That has been set aside. It is gone. Misdemeanor theft involves an amount of less than $1,000. That evidence of that is in this record. What the government wants to do is, I believe, inappropriately shift the burden to Ms. Langley to produce evidence of her deportability. And that cannot be done. There is a bill in Congress now that the person who was deported to Montana was deported to Montana. Your time is way expired. So if you want to just sum up quickly, that's fine. We're giving you a lot of extra time just for fun. Your Honor, I'll rest my case. I believe that the government has not met its burden by to establish by clearing convincing evidence that Ms. Langley is deportable. Okay. Thank you. All right. Thank you, counsel, both of you, for the matter just argued. And the matter just argued will be submitted. We need to take a brief recess to allow a mechanical action to be reestablished. This court stands in recess.
judges: Leavy, Rymer, Fisher